IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ROSALINDA CINTRON, | CV 17–108–M–DLC |
| Plaintiff, | |
| vs. | ORDER |
| TITLE FINANCIAL CORPORATION, INSURED TITLES, LLC, and JOHN DOES 1-5, | |
| Defendants. | |

On December 6, 2018, the Court held a hearing on six of the parties'
pending motions, listed in the order in which they were addressed at the hearing
and will be discussed in this Order: (1) Plaintiff's Second Motion to Compel
Production of Discovery (Doc. 44); (2) Plaintiff's Third Motion to Compel
Discovery (Doc. 62); (3) Defendants' Motion for Rule 37 Sanctions (Doc. 65); (4)
Plaintiff's Motion to Quash Defendants' Subpoenas (Doc. 50); (5) Defendants'
Motion to Exclude Plaintiff's Treating Providers from Offering Testimony at Trial
or, Alternatively, Limit Testimony to Medical Records (Doc. 38); and (6)
Plaintiff's Motion to Extend Scheduling Order (Doc. 47).

## LEGAL STANDARD

Rulings on discovery issues, including relevance, fall within the Court's

-1-

broad discretion over case management. *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). The scope of discovery generally extends to all "nonprivileged matter[s] that [are] relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). For purposes of discovery, relevance is fairly expansive, "encompass[ing] any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Moe v. Sys. Transp., Inc.*, 270 F.R.D. 613, 618 (D. Mont. 2010). "If the information sought might reasonably assist a party in evaluating the case, preparing for trial, or facilitating settlement, it is relevant to the subject matter involved in the pending action." *Id.* The information "need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). A court may act to limit unreasonably cumulative, overbroad, unduly burdensome, or irrelevant discovery. Fed. R. Civ. P. 26(b)(2)(c).

A party that has been unable to obtain requested information absent court involvement may move to compel disclosure. Fed. R. Civ. P. 37(a)(2)(A). The moving party bears the burden of showing that the discovery sought is "relevant" as defined above, and the party resisting discovery bears the burden of showing that nondisclosure is appropriate. *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995); *DIRECT TV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal.

-2-

2002).

The Court takes an expansive view regarding relevance for purposes of discovery. At risk of stating the obvious, subject matter or documents may be relevant, as defined in the preceding paragraphs, for purposes of discovery, but will not meet the more stringent standard of relevance to constitute admissible evidence at trial. The Court views the pending discovery motions with this broader standard in mind.

## DISCUSSION

### I. Plaintiff's Second Motion to Compel Production of Discovery

In her second motion to compel production, Plaintiff Linda Cintron asks the Court to order Defendants Title Financial Corporation and Insured Titles, LLC (collectively, "Title Financial") to produce various emails that Title Financial has withheld as privileged attorney-client communications or work product.[1] The emails are responsive to Cintron's Request for Production 28, which reads:

> Please produce any and all records and administrative files kept by Insured Titles, LLC and/or Title Financial Corporation pertaining to:
>
> (a) Any and all complaints by Linda Cintron against any Insured Titles, LLC and/or Title Financial Corporation employees;
>
> (b) Any and all complaints made against Linda Cintron;
>
> (c) Linda Cintron's performance;

---

[1] The Court notes, with approval, that Title Financial listed all of the withheld documents on a privilege log (Docs. 73-9 & 112-1) consistent in content and format with Rule 26(b)(5)(A).

-3-

(d) Any investigations conducted during or after Ms. Cintron's employment that were initiated by any complaints by or against Ms. Cintron.

The Court has read the documents which were produced for in camera review (Docs. 105-1 & 114), and it concludes that certain of the emails are discoverable and must be produced. To facilitate review, the in camera documents which the Court concludes are discoverable are filed as an attachment to this Order.

However, the Court finds that Title Financial's nondisclosure was "substantially justified," and it will not order Title Financial to pay Cintron's expenses incurred to obtain these documents. Fed. R. Civ. P. 37(a)(5)(A)(ii).

In a civil case, such as this, "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. However, in the absence of federal authority to the contrary, "[t]he common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege" as to federal claims. *Id.* In this instance, the Plaintiffs have brought both federal and state law claims, and the withheld documents may be relevant to both types of claims. It is unclear whether federal or state privilege law applies in circumstances such as these. *See Jaffee v. Redmond*, 518 U.S. 1, 17 n.15 (1996) ("express[ing] no opinion" on "the proper

rule in cases such as this in which both federal and state claims are asserted in federal court . . ."); *In re Sealed Case (Med. Records)*, 381 F.3d 1205, 1212–13 (D.C. Cir. 2004); *Piper v. Alaska Airlines, Inc.*, 34 F.3d 1073 (9th Cir. 1994) (Table); 23A Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice & Procedure* § 5434 (1st ed. Supp. 2018). Here, because both parties cite exclusively to federal law, the Court deems any argument in favor of the application of state law waived, and it follows the parties in looking to decisions of other federal courts.

Title Financial asserts both attorney-client privilege and work product doctrine. The attorney-client privilege protects confidential communications between an attorney and client made for the purpose of securing the attorney's legal advice. *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996). "That a person is a lawyer does not, *ipso facto*, make all communications with that person privileged. The privilege applies only when legal advice is sought from a professional legal advisor *in his capacity as such.*" *Id.* at 1501 (citation and internal quotation marks omitted). Generally, it is presumed that communications between an attorney and her client are privileged, but that presumption "does not extend to communications with in-house counsel" because those communications "might well pertain to business rather than legal matters," and "[t]he privilege does not protect an attorney's business advice." *United States v. Chevron Texaco Corp*,

241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002); *accord Dewitt v. Walgreen Co.*, 2012 WL 3837764, at *3 (D. Idaho Sept. 4, 2012).

"[T]he work-product doctrine is distinct from and broader than the attorney-client privilege." *United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975). "To qualify for work-product protection, documents must: (1) be 'prepared in anticipation of litigation or for trial' and (2) be prepared 'by or for another party or by or for that other party's representative.'" *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (quoting *In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004)); *see* Fed. R. Civ. P. 26(b)(3).

The Court finds that some of the withheld communications are discoverable and that others are not. All of the withheld communications were sent to or from in-house and/or outside counsel, and the discoverability of the withheld materials hinges on whether counsel was acting as a legal or a business advisor. *See Chevron Texaco*, 241 F. Supp. at 1076.

In most of the emails, both in-house and outside counsel were acting as legal advisors, with Title Financial and its employees soliciting legal opinions in order to protect Title Financial from legal exposure. These emails fall squarely within both the attorney-client privilege and the work-product doctrine. Each of the three emails discussed in the parties' briefs regarding Cintron's second motion to compel are protected, as are the clear majority of the emails withheld from Title

Financial's production of November 15, 2018.

However, a small handful of the emails are discoverable even though general and/or outside counsel were cc'ed. These materials involve discussions about: (1) the business decisions that were and should be made in response to a workplace conflict involving Cintron and a coworker, (2) the effectiveness of those decisions, and (3) Title Financial's general employment policies and procedures. Despite the inclusion of attorneys' email addresses in the thread, no legal advice was sought or offered.

Additionally, upon the Court's review of the materials, all of the attachments to the emails and some quoted text within certain emails are discoverable. The discoverable materials comprise notes from an internal human resources investigation, individual employees' notes and communications regarding the relevant workplace conflict, and various policies and procedures. They are responsive to Requests for Production 28 and/or 35, the latter of which is discussed in greater detail below. After reviewing the materials in some depth, the Court is satisfied that none of the materials involve confidential communications between Title Financial and counsel and that all memoranda and notes were prepared by Title Financial employees to aid Title Financial's business decision-making rather than to prepare for litigation.

Accordingly, the Court has attached a sealed document to this order

including the discoverable materials. If further materials are found in response to the Court's order regarding Cintron's third motion to compel discovery, discussed immediately below, the Court trusts that Title Financial will follow the Court's guidance to determine the discoverability of those materials.

Because neither party has entirely prevailed on this motion, and because Title Financial acted appropriately in shielding privileged communications from discovery, the Court will not order either party to pay the other party's expenses. *See* Fed. R. Civ. P. 37(a)(5)(A).

## II.     Plaintiff's Third Motion to Compel Discovery

Cintron's third motion to compel discovery involves her Request for Production 35, which reads:

> Please produce a true and accurate copy of all instant messages or other electronic communications from January 1, 2014 to July 1, 2016 relating to the Plaintiff's employment with any of the Defendants.

In the course of discovery, Title Financial raised various objections to this request, primarily relying on its position that the request was overbroad and that responding to it would be unduly burdensome. The parties engaged in some dialogue regarding whose accounts to search and for what search terms, with both parties generally arguing that the other party bore the burden of identifying relevant search terms and the accounts likely to include discoverable information.

Thus far, Title Financial has produced 5,342 documents by searching four

-8-

email accounts for thirteen search terms, with those search terms having been provided by Cintron on September 28, 2018. On October 18, 2018, Title Financial produced the results of its search of Cintron's employee email account. Title Financial ultimately did not provide any responsive messages and emails from any other employee's account until November 15, 2018, thirteen days after Cintron filed the relevant motion to compel. Title Financial has taken the position that it could not produce these materials sooner, as it only learned which accounts it should search upon reading Cintron's motion to compel. Cintron reviewed approximately 80% of those documents produced on November 15 prior to the hearing, and she represented that about 1% of those documents reviewed—50 or so—were responsive but that those 50 documents were significant.

Cintron argues that she was entitled to those responsive documents before she filed her third motion to compel and that she is entitled to additional communications, which Title Financial can find and produce by searching the accounts of the additional employees identified by Cintron. The Court agrees that Title Financial has not met its discovery obligations, and it accordingly grants Cintron's third motion to compel.

Federal Rule of Civil Procedure 34 outlines the means by which electronically stored information must be requested and produced. It requires "reasonable particularity," Fed. R. Civ. P. 34(b)(1)(A), but not "great and

impracticable specificity," Fed R. Civ. P. 34(b) advisory committee's note to 1946 amendment. "The test for reasonable particularity is whether the request places a party upon reasonable notice of what is called for and what is not." *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 616 (C.D. Cal. 2013) (citations and internal quotation marks omitted).

Request for Production 35, while not drafted with surgical precision, gives sufficient notice of the information requested. And, as the Court stated at the time of the hearing, the request is not overly broad. It is limited in time and scope. In the context of this wrongful discharge action, the natural reading of a request for materials "relating to [Cintron's] employment" is that the requesting party wants materials involving discussion of Cintron's job performance and continued employment, e.g., performance reviews, disciplinary measures, complaints, communications regarding the same, etc. Perhaps it would be overbroad in another context, but the parties know full well the nature of this matter, and it is clear what types of materials may be both responsive to this request and discoverable. And, of course, the cure for a lack of relevance is a sustained objection at trial.

The Court recognizes that it is cumbersome for Title Financial to search eighteen email accounts. However, this late-stage discovery burden could have been avoided by an honest effort to figure out and respond to what is ultimately a reasonable request for discoverable information. After all, Title Financial is in a

better position than is Cintron to determine which accounts are likely to yield responsive documents. Further, because Title Financial currently employs most of these individuals, it could have worked with the individuals to find the documents without resorting to what may be clumsy and/or overbroad search terms.

Accordingly, the Court orders that Title Financial search the fifteen remaining accounts requested by Cintron—that is, the accounts of Bob Sewell, Tina Bouchee, Sara Curry, Marlene Schnurr, Mandy Fassio, Alisha Owens, Sandy Smith, Carol Blair, Diane Maxted, Irene Bartow, Duskie Gramm, Nancy Rogers, Kiana Rief, Jennifer Palmer, Jay Williams, and Phil DeAngeli. However, in the interest of limiting the burden on the parties to produce and review responsive documents, the Court limits the searches to be performed. Title Financial must search these accounts only for documents that include *both* (1) "Linda" or "Brandie" and (2) any of the other terms previously searched, as outlined in Title Financial's Second Supplemental Response to Plaintiff's Request for Production 35. (*See* Doc. 79-3.)

The issue of whether Cintron's expenses should be awarded will be addressed later in this order.

### III. Defendants' Motion for Rule 37 Sanctions

Title Financial, too, alleges that important material has been withheld—in its case, medical records relevant to Cintron's position that Title Financial caused her

-11-

to suffer emotional distress, anxiety, depression, and PTSD. Title Financial learned of the existence of these records relatively recently, and it learned of them not through disclosure by Cintron but through deposition testimony by Cintron's medical providers. Arguing that the nondisclosure of these records has prevented it from rebutting causation, Title Financial requests: (1) default judgment on Cintron's claims for general and/or medical damages, or (2) the exclusion of testimony by Cintron regarding causation of any medical conditions or emotional distress.

Cintron has, in fact, failed to comply with the obligations of discovery by withholding discoverable information responsive to Title Financial's Interrogatory 18—seeking all medical care providers for ten years prior to the events giving rise to Cintron's claims—and Request for Production 27—seeking all corresponding medical records. Although it will not weigh in on the intentions of Cintron or her attorneys, the Court has no trouble concluding that Title Financial was entitled to information and materials that it was not given. And, like Title Financial, the Court is unsure of whether additional responsive materials remain unproduced.

The Court agrees with Title Financial that it has suffered prejudice because of the late and incomplete disclosure of highly relevant medical information. At minimum, Title Financial is entitled to: (1) discovery of all medical records relating to Cintron's mental health from 2004 to the present; and (2) the

opportunity to retain a causation expert, disclose the opinions of that expert, and call that expert as a witness at trial. Cintron must produce any and all remaining and responsive medical records. The Court reminds her that she is to produce **all** of her medical records for the time periods requested. The Court will determine the relevance of any of her medical records at the time of trial.

That said, the Court cannot justify the extreme sanction sought by Title Financial. If the Court were to grant either of the remedies sought, it would take the lion's share of Cintron's damage case away from her, leaving her with a bare claim for lost wages. Instead, the Court will order the production of all remaining medical records, and it will allow Title Financial to retake depositions, take depositions of previously undisclosed healthcare providers, and retain and disclose the opinions of a causation expert, who will be allowed to testify and offer disclosed opinions at trial.

The issue of whether Title Financial's expenses should be awarded will be addressed later in this order.

## IV.    Plaintiff's Motion to Quash Defendants' Subpoenas

Cintron asks the Court to quash subpoena issued by Title Financial to four local pharmacies in search of Cintron's records from 2004 to the present time. Title Financial has received records from one pharmacy; the other three pharmacies are awaiting resolution of the pending motion to quash.

As discussed above, Cintron has failed to disclose significant, discoverable medical information and materials. Given that failure, the Court finds that Title Financial acted reasonably in seeking the pharmacy records directly. Accordingly, the motion to quash is denied. Because it is unclear whether the subpoenas, though reasonable, are necessary, the Court will not award expenses.

Title Financial shall issue new subpoenas to the remaining three pharmacies for the time period of 2004 to the present. Title Financial shall produce copies of these records to Cintron immediately upon receipt.

## V.  Defendants' Motion to Exclude Treating Providers

Also pending is Title Financial's motion to exclude Cintron's treating providers from testifying at trial or, alternatively, to limit the providers' testimony to their medical records. The Court addressed this issue in its scheduling order of November 29, 2017. As explained in that order, "a treating physician is not considered a retained expert witness unless the testimony offered by the treating physician goes beyond care, treatment and prognosis." (Doc. 23 at 7.) However, "[i]f [a] treating physician's testimony goes beyond care, treatment and prognosis then there must be full compliance with the discovery requirements of Fed. R. Civ. P. 26(a)(2)(B)." (*Id.*)

Title Financial argues—and the Court agrees—that Cintron's disclosures as to her treating providers are not in compliance with the requirements of Rule

-14-

26(a)(2)(B). The disclosures are simply brief, informal summaries of the providers' interactions with and care for Cintron. These disclosures fall far short of the requirements of Rule 26(a)(2)(B). Accordingly, the Court will not allow the providers to provide expert testimony at trial beyond the subjects of care, treatment and prognosis.

Thus, the Court will not exclude all testimony from Cintron's treating providers. Because Cintron's treating providers have personal knowledge of Cintron's care, treatment, and prognosis, they are more appropriately characterized as Rule 26(a)(2)(C) experts. If Cintron has not already done so, she shall provide Title Financial with a Rule 26(a)(2)(C) disclosure.

Upon proper objection by Title Financial at trial, the Court will exclude medical causation testimony by Cintron's treating providers unless it falls within the scope of proper treating physician testimony—and, indeed, such testimony may be appropriate under the circumstances. *See St. Vincent v. Werner Enters., Inc.*, 267 F.R.D. 344, 345 (D. Mont. April 2, 2010) ("If properly based on personal knowledge, history, treatment of the patient, and facts of his or her examination and diagnosis, then the treating physician may give an opinion as to the cause of the injury or degree of the injury in the future."); *accord Goodman v. Staples the Office Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011) ("[W]e . . . hold that a treating physician is only exempt from Rule 26(a)(2)(B)'s written report

-15-

requirement to the extent that his opinions were formed during the course of treatment.").

At this stage of litigation, the Court denies the motion in part and reserves ruling in part. The Court denies Title Financial's request to exclude all testimony by Cintron's treating providers. It further takes this opportunity to reinforce the general principles outlined in its scheduling order, its statements made at the hearing, and the cases cited above. Cintron's physicians may opine about causation to the degree that their opinions are directly related to Plaintiffs' treatment, and they may not offer causation opinions informed by "information . . . that they hadn't reviewed during the course of treatment." *Goodman*, 644 F.3d at 826. If there is any dispute at trial regarding the scope of the testimony of Cintron's treating physicians, the Court will rule on the objections at that time.

## VI.    Award of Expenses

Cintron has prevailed on her third motion to compel, and Title Financial has prevailed on its motion for Rule 37 sanctions, although the Court has adopted an alternative remedy in connection with this latter motion. Generally speaking, "[i]f [a] motion [to compel] is granted—or if the disclosure or requested discovery is provided after the motion is filed—the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's

-16-

fees" unless: (1) the movant failed to attempt "in good faith" to solve the dispute without court action; (2) the "opposing party's nondisclosure, response, or objection was substantially justified"; or (3) an award would otherwise be "unjust." Fed. R. Civ. P. 37(a)(5)(A).

Regarding Cintron's third motion to compel, the Court has read all of the attachments to the briefs filed in connection with that motion. Although the tone of the parties' communications leaves something to be desired, the Court finds that Cintron made a good faith attempt to solve the discovery dispute by providing search terms to Title Financial. Fed. R. Civ. P. 37(a)(5)(A)(i). If Title Financial had a reasonable basis for objecting to the request, it did not make that legal argument known to Cintron. Furthermore, Title Financial, rather than Cintron, was better positioned to determine how to find responsive documents. Based on these circumstances, the Court could require Title Financial to pay Cintron's "reasonable expenses incurred in making the motion, including attorney's fees." Fed. R.Civ.P 37(a)(5)(A).

Regarding Title Financial's motion for Rule 37 sanctions, the Court has serious concerns regarding the manner in which Cintron elected to pick and choose which medical records were produced to Title Financial, in the face of appropriate requests to produce all of her medical records for specified time periods. Having placed her medical and mental condition at issue in this case, all of her medical

-17-

records were fair game, and Title Financial was entitled to discover them. Thus, the Court could conclude that Title Financial made good faith efforts to obtain the records before filing its motion, and Cintron's failure to produce them was not substantially justified, justifying an award to Title Financial of the reasonable expenses it incurred in bringing its motion.

Quite frankly, the Court is disappointed in the manner in which both parties have conducted themselves in the course of discovery in this case. The tone of the communications between counsel for the parties, like the tone of the briefs, is concerning. However, because both parties have misbehaved, the Court determines it would be unjust to award expenses in connection with these discovery motions, particularly, where, as here, the respective expense requests would most likely cancel each other out. The Court also notes that none of the counsel involved in this case have a history of similar discovery violations.[2] Thus, no expenses will be awarded to either party.

## VII. Plaintiff's Motion to Extend Scheduling Order

On October 12, 2018, Cintron filed a motion to continue all deadlines in this matter, up to and including the trial date of February 11, 2019. As ordered below, the Court will allow continued discovery until the parties have met the obligations

---

[2] The Court is also loathe to create another opportunity for the parties to engage in a further dispute regarding the reasonableness of the respective expense requests. It is time for everyone to focus on the impending tasks at hand, which include complying with this order and preparing this case for trial.

outlined in this order. It will also extend the expert disclosure deadline as necessary for Title Financial to cure the prejudice suffered as a result of the nondisclosure of Cintron's medical records. However, it will not continue the trial date and other associated deadlines. This case will proceed to trial as scheduled on February 11, 2019.

Accordingly, it is ORDERED that:

(1) Plaintiff's Second Motion to Compel Production of Discovery (Doc. 44) is GRANTED in part and DENIED in part. The Court has made a determination as to the discoverability of all withheld documents, and it has filed the discoverable documents under seal as an exhibit to this Order. Title Financial shall produce any other discoverable communications that it finds in the course of complying with this Order **by Friday, January 11, 2019**.

(2) Plaintiff's Third Motion to Compel Discovery (Doc. 62) is GRANTED. Title Financial shall search the accounts of Bob Sewell, Tina Bouchee, Sara Curry, Marlene Schnurr, Mandy Fassio, Alisha Owens, Sandy Smith, Carol Blair, Diane Maxted, Irene Bartow, Duskie Gramm, Nancy Rogers, Kiana Rief, Jennifer Palmer, Jay Williams, Phil DeAngeli. It shall produce any and all materials (including text messages, instant messages, and emails) that include **both** (1) "Linda" or "Brandie" **and**

-19-

(2) any of the other terms previously searched, as outlined in Title

Financial's Second Supplemental Response to Plaintiff's Request for

Production 35. It shall also produce any previously undisclosed text

messages or instant messages sent to or from the four accounts

previously searched. Title Financial shall produce these documents **by

Friday, January 11, 2019**.

(3) Defendants' Motion for Rule 37 Sanctions (Doc. 65) is GRANTED in

part. Cintron shall locate and produce all remaining and responsive

medical records from 2004 to the present **by Friday, January 11, 2019.**

Title Financial may take all measures it deems necessary to cure the

prejudice suffered as a result of Cintron's nondisclosure, including

retaking depositions,[3] taking depositions of previously undisclosed

healthcare providers, and retaining and disclosing opinions of a causation

expert pursuant to Fed. R. Civ. P. 26(a)(2)(B). All of this work must be

completed **by Friday, January 11, 2019.** If she chooses to do, Cintron

may take the deposition of Title Financial's causation expert **on or

before Friday, January 18, 2019**.

(4) Plaintiff's Motion to Quash Defendants' Subpoenas (Doc. 50) is

DENIED. Title Financial shall issue new subpoenas as explained in this

---

[3] Any retaken depositions shall be limited to questions regarding previously undisclosed medical
records.

-20-

order.

(5) Defendants' Motion to Exclude Plaintiff's Treating Providers from Offering Testimony at Trial or, Alternatively, Limit Testimony to Medical Records (Doc. 38) is GRANTED in part, and ruling is RESERVED in part as explained in this order.

(6) Plaintiff's Motion to Extend Scheduling Order (Doc. 47) is GRANTED in part. This case will proceed to trial on February 11, 2019. Unless modified by this order, all of the deadlines provided in the Court's scheduling order, dated November 29, 2017 (Doc. 23) remain in full force and effect.

(7) This matter is referred to Judge Lynch for the limited purpose of conducting a settlement conference.

(8) The Clerk of Court shall file the attached exhibit under seal.

DATED this 17th day of December, 2018.

Dana L. Christensen, Chief Judge
United States District Court